## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRANCH BANKING & TRUST COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **2:12-cv-2729-JHH** |
| | ) | |
| **BOBBY L. BYNUM** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM OF DECISION

The court has before it the May 16, 2013 Renewed Motion (Doc. # 11) for Summary Judgment filed by Plaintiff Branch Banking and Trust Company ("BB&T"), as successor in interest to Colonial Bank.  Pursuant to the court's May 21, 2013 order (Doc. # 12), the Motion was deemed submitted, without oral argument, on June 18, 2013.  After consideration of the briefs and evidence before the court, the Motion (Doc. #11) is due to be granted in full for the following reasons.

### I. Procedural History

Plaintiff BB&T commenced this action on August 17, 2012 by filing a complaint in this court alleging breach of contract arising from Defendant Bobby L. Bynum's failure to repay a commercial loan he unconditionally guaranteed.

Plaintiff's May 16, 2013 Motion (Doc. #11) for Summary Judgment asserts that "[t]here is no genuine issue of material fact regarding Defendant's breach and resulting liability for the repayment of the amounts due under his guaranty agreement. . . . Accordingly, Plaintiff is entitled to the entry of summary judgment against Defendant." (Id. at 3.)

Both parties have filed briefs and submitted evidence in support of their respective positions. Plaintiff submitted a brief and evidence[1] (Doc. # 11) in support of its own Motion for Summary Judgment on May 16, 2013. On June 11, 2013, Defendant filed a brief and evidence[2] (Doc. # 13) in opposition to Plaintiff's Motion for Summary Judgment. On June 18, 2013, Plaintiff filed a brief and evidence (Doc. # 15) in reply to Defendant's opposition. All briefs and evidence have been considered in deciding the instant Motion (Doc. #11) for Summary Judgment.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

---

[1] Plaintiff submitted the following evidence in support of summary judgment: affidavit of Susan Bell with attachments; August 8, 2012 sworn testimony of Bobby Bynum given by him in his capacity as President and sole shareholder of Bynum Properties, Inc. at the initial meeting of creditors for Bynum Properties Inc.'s Chapter 11 bankruptcy proceedings; stipulation of fact between debtor and BB&T filed in the bankruptcy proceedings; and affidavit of Clifton C. Mosteller.

[2] Defendant submitted the following evidence in opposition to summary judgment: note executed May 24, 2004; the guaranty executed May 24, 2004; note executed January 25, 2006; not executed June 22, 2005; undated and unsigned loan checklist; and Bynum affidavit.

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See id. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment

3

may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively

4

show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

## III. Relevant Undisputed Facts[3]

On May 24, 2004, Colonial Bank, N.A.[4] made a loan to Bynum Properties, Inc.

---

[3] If the facts are in dispute, they are stated in a manner most favor to the non-movant.  See Fitzpatrick, 2 F.3d at 1115.

[4] On August 4, 2009, the FDIC entered into a Purchase and Assumption Agreement, Whole Bank, All Deposits, Among Federal Deposit Insurance Corporation, Receiver of Colonial Bank, Montgomery, Alabama, and Branch Banking and Trust Company, Winston-Salem, North

in the original principal amount of $244,555.00, and the parties executed a Commercial Promissory Note and Security Agreement ("the Original Note").  (Bell Aff. ¶ 3; Exh. A to Bell Aff.)   All obligations of the borrower, Bynum Properties, Inc., were guaranteed by the Defendant Bobby L. Bynum, and he executed a Guaranty dated May 24, 2004.  (Id. ¶ 5; Exh. C to Bell Aff.)  The Guaranty stated that he unconditionally and absolutely guaranteed repayment of any and all indebtedness, obligations and liabilities incurred by Bynum Properties, Inc. under the note.  (Id.) In addition to Defendant's obligations under the Guaranty to pay all amounts owing under the note, the Guaranty also provides that he shall also be liable for costs and expenses, including attorneys' fees, incurred in connection with the enforcement of the Guaranty.  (Bell Aff. ¶ 6; Exh. C to Bell Aff.)  The Guaranty further stated that the guarantor shall guaranty repayment of any and all obligations "whether now owing or hereafter arising out of credit previously, contemporaneously, or hereafter granted by the Beneficiary to the Borrower . . . ."  (Exh. C to Bell Aff.)

The Original Note was renewed[5] and a second Commercial Promissory Note

---

Carolina, under which BB&T purchased various assets of Colonial Bank, including the note and the guaranty at issue in this case and all other related loan documents of Bynum Properties, Inc. and Defendant.  (Bell Aff. ¶12.)

[5] In his opposition brief, Defendant "disputes the alleged 'fact' that the Current Note was a 'renewal' or extension of the Original Note, notwithstanding the use of that term by BB&T and Bynum Properties in the bankruptcy court."  (Doc. # 13 at 2.)  The problem with this "dispute", however, is that Defendant does not cite to any evidence in support of his argument that the

and Security Agreement was executed by Bynum Properties, Inc. and dated January 25, 2006, in the original principal amount of $244,108.39.  (Bell Aff. ¶ 4; Exh. B. to Bell Aff.; Def.'s Exh. 3 ¶ 2.)

Bynum Properties, Inc. defaulted under the terms of the note for, among other things, failure to make payment when due in accordance with the express terms of the note.  (Bell Aff. ¶ 7.)  Similarly, Defendant defaulted under the terms of the Guaranty for, among other things, failure to make payment when due in accordance with the express terms of the Guaranty.  (Id. ¶ 8.)

BB&T gave Bynum Properties, Inc. and the Defendant written notice of their defaults in a January 25, 2012 demand letter.  (Id. ¶ 9.)  Despite demand from BB&T, Defendant has failed and refused to pay the outstanding balance due under the Loan and Guaranty.  (Id. ¶ 10.)

On May 30, 2012, Bynum Properties, Inc. filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Alabama.  (See Pl. Exhs. 2-3;

_____

January 6, 2006 note was in fact a renewal of the original note.  Defendant's bald assertion is conclusory and without specific supporting facts.  See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Sammons v. Taylor, 967 F.2d 1533, 1544-45 & n. 5 (11th Cir. 1992). While all reasonable inferences should be made in favor of the nonmovant, any "inferences based upon speculation and conjecture [are] not reasonable." Blackston v. Shook and Fletcher Insulation Co., 764 F.2d 1480, 1482 (11th Cir.1985).  Therefore, this assertion by Defendant is not considered a disputed fact for purposes of summary judgment.  See id.

7

Bankruptcy Case No. 12-02568.)  On August 8, 2012, Defendant testified under oath at the § 341 initial meeting of creditors in the bankruptcy case in his capacity as President and sole member of Bynum Properties, Inc.  (See Pl. Exh. 2.)  During his sworn testimony, Defendant admitted that the loan at issue in this case had matured and the indebtedness remained unpaid.  (Pl. Exh. 2 at 18-19.)

## IV.  Analysis

BB&T argues that it is entitled to summary judgment against Defendant for the outstanding principal, accrued and accruing interest, and late charge on the loan because there is no genuine issue of fact as to Defendant's breach of his guaranty agreement and Plaintiff's resulting damages.  (Doc. # 11 at 8-13.)  BB&T also contends that it is entitled to an award of attorney's fees and costs against Defendant. (Id. at 13-14.)

## A.  Breach of Guaranty

The parties agree that Alabama law governs the guaranty at issue in this case. Because a guaranty agreement is a contract, the elements for a breach of guaranty claim are the same as those for a breach of contract claim: "(1) the existence of a valid contract binding upon the parties in the action, (2) his own performance under the contract, (3) the defendant's  nonperformance, and (4) damages."   Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 975 (Ala.1998).   The elements for a valid

8

contract are "an offer and an acceptance, consideration, and a mutual assent to the essential terms of the agreement." Armstrong Business Services, Inc. v. AmSouth Bank, 817 So.2d 665, 673 (Ala.2001).

Additionally, under Alabama law, "[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." Delro Industries, Inc. v. Evans, 514 So.2d 976, 979 (Ala. 1987). Moreover, "to recover under a . . . continuing guaranty, an additional element, notice to the guarantor of the debtor's default, must be proved." Id. A continuing guaranty is "a guaranty of future indebtedness uncertain as to amount or time." Id.

Defendant contests only one element as to BB&T's breach of guaranty claim - the existence of a valid contract. Defendant does not dispute BB&T's performance under the contract and his own nonperformance. In addition, although he makes an argument about BB&T's damage, see infra, he does not dispute that BB&T suffered damages. As to the validity of the contract, Defendant make two arguments. He first contends that the guaranty lacks consideration. (Doc. # 13 at 3-4.) Second, Defendant contends that the January 25, 2006 note was not a renewal or extension of the May 24, 2004 note and asserts that a question of fact exists as to whether the

guaranty was intended by the parties to extend beyond the terms of the Original Note, and, if it was, whether the execution of the January 2006 note constituted a "material modification" of the guaranty that would discharge Defendant under Alabama law. (Id. at 6-7.) The court addresses each argument below.

**1. The Guaranty is Supported with Consideration under Alabama law.**

Under Alabama law, consideration paid to a primary obligor in connection with a loan agreement constitutes sufficient consideration to support an associated guaranty agreement. The reason for this is simple: "when such an agreement is made prior to, or contemporaneously with, the creditor's note, and both the agreement and the note are part of the same transaction, consideration rendered to the principal obligor is sufficient consideration to support a contract of guaranty." Hackney v. First Alabama Bank, 555 So.2d 97, 102 (Ala. 1989) (citations omitted).

Here, the borrower, Bynum Properties, Inc. entered into the Original Note with BB&T's predecessor, Colonial Bank, in the original principal amount of $244,555.00. (Exh. A. to Bell Aff.) Defendant executed the guaranty contemporaneously with the execution of the Original Note, where he unconditionally and absolutely guaranteed repayment of any and all indebtedness, obligations and liabilities incurred by the borrower. (Exh. C to Bell Aff.) The bank then loaned the funds to the borrower under the Original Note and that extension of credit constituted sufficient

consideration to support the guaranty.  See Hackney, 555 So.2d at 102.

Additionally, the guaranty is supported by the prospect of future extensions of credit.  Under Alabama law, "the promise of extension of credit in the future to the principal debtor is good consideration in a guaranty contract."  Medley v. Southtrust Bank of the Quad Cities, 500 So.2d 1075, 1078 (Ala. 1986) (citations omitted).  Here, the express language of the guaranty contemplates the future extension of credit.  For example, the guaranty stated that the guarantor shall guaranty the repayment of any and all obligations "whether now owing or hereafter arising out of credit previously, contemporaneously, of hereafter granted by the Beneficiary to the Borrower . . . ." (Exh. C to Bell Aff.)  Such language is sufficient under Alabama law to establish consideration in support of a guaranty contract.  See Medley, 500 So.2d at 1078.

### 2.  The Guaranty is a Continuing Guaranty and the Renewal Note was not a Material Modification to the Guaranty.

In Defendant's next argument, Bynum disputes that the January 25, 2006 note was a renewal or extension of the Original Note and asserts that a question of fact exists as to whether the parties intended the guaranty to extend beyond the terms of the Original Note.  The court rejected this alleged dispute of fact, however, as Bynum did not present any evidence to support his assertion.  See footnote 5, supra.  In the alternative, Defendant argues that if it was meant to extend the execution of the

11

January 2006 note was a "material modification" of the guaranty that would discharge the Defendant from liability under Alabama law.  (Doc. # 13 at 6-7.)

The clear, plain language of the guaranty easily dismisses both arguments.  The express language of the guaranty makes it abundantly clear that it covers both current and future extensions of credit by the Bank to the Borrower:

> The undersigned, jointly and severally hereafter called the "Guarantor," in order to induce the Beneficiary to extend or continue to extend financial accommodations to the Borrower, hereby guarantees to the Beneficiary the full and prompt payment of all loans, drafts, overdrafts, notes, bills, and all other debts, obligations, and liabilities of every kind and description, whether now owing or hereafter arising out of credit previously, contemporaneously, or hereafter granted by the Beneficiary to the Borrower, whether arising from dealings between the Beneficiary and the Borrower, or from dealings by which the Beneficiary may become, in any manner whatever, a creditor of the Borrower.

(Exh. C. to Bell Aff ¶ 1.)   Additionally, although the guaranty allowed for a cap or limit to the amount of the guaranty, there was no limit specified, and in fact, the typewritten note states that the guaranty was "unlimited."  (Id. ¶ 6.)  By its terms, the guaranty remains in effect until the guarantor gives thirty (30) days written notice of its termination.  (Id. ¶ 5.)  There is no contention here that the guaranty was ever cancelled.

This sweeping language extinguishes all arguments made by Defendant.  It is

clear that the guarantor is liable for all liabilities of every kind, whether owing at the time the guaranty was signed, or arising afterwards, and it remains in full force and effect until termination.[6]  Defendant cannot escape the plain meaning of the words contained in the guaranty.

For these reasons, Plaintiff's Motion for Summary Judgment is due to be granted.  There is no issue of material fact regarding Defendant's breach of the guaranty and resulting liability for the repayment of the amounts due under his guaranty agreement.[7]

## B.  Plaintiff's Damages, Including Attorneys Fees and Costs

With regard to the Plaintiff's damages, in addition to the amounts owing under the guaranty, the court agrees (and Defendant does not dispute) that Plaintiff is entitled to recover attorneys fees and costs under the guaranty.  The guaranty specifically provides for the recovery of "reasonable attorneys fees." (Exh. C to Bell

---

[6] The court rejects the argument made by Defendant regarding the unsigned, undated, unnamed "Construction Loan Checklist" exhibit.

[7] Because the court can easily dispose of this case on substantive grounds, the court refuses to decide the judicial estoppel issue.  As evidenced by the briefs of the parties, there is a real question regarding whether to apply Alabama's judicial estoppel law, see Original Appalachian Artworks, Inc. v. Diamond Associates, 44 F.3d 925, 930 (11th Cir. 1995) ("the application of the doctrine of judicial estoppel is governed by state law"), or federal judicial estoppel law, see Middleton v. Caterpillar Indus., Inc., 979 So.2d 53, 57 & 59 (Ala. 2007) (explicitly declining to follow the Eleventh Circuit and holding that judicial estoppel is procedural in nature, so that the law of the forum governs its application); the applications of each would yield different results.

Aff.)  Under Alabama law, it is well settled that provisions relating to the payment of attorney's fees are enforceable.  See James v. James, 768 So.2d 356 (Ala. 2000).

The court **ORDERS** Plaintiff to submit verified evidence of its damages to date, including the following:

(1) Principal amount owing under the guaranty;

(2) Accrued interest, including the amount of interest owing on a per diem basis;

(3) Bank fees; and

(4) Attorneys' fees and costs.

With regard to the attorneys' fees and costs, as the court must make a determination of what is reasonable, the evidence should include a detailed account of exactly where the fees originate – including an itemization and explanation of any and all incurred attorneys fees and expenses.  This itemization should include the hourly rate of the attorneys and other individuals working on the instant case.   The verified evidence **SHALL** be filed no later than **October 9, 2013**.

## C.  Conclusion

In summary, the May 16, 2013 Renewed Motion (Doc. # 11) for Summary Judgment filed by Plaintiff Branch Banking and Trust Company is due to be granted. A separate, final order will be entered at a later date, after the court has had ample

14

opportunity to review BB&T's verified evidence of damages.

    **DONE** this the ___12th___ day of September, 2013.

                                          _____

                                        SENIOR UNITED STATES DISTRICT JUDGE